Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL (XII)

| | | |
|---|---|---|
| RAMÓN TORRES NEGRÓN, *ET AL.*<br><br>Apelante<br><br><br>v.<br><br><br>JOSEFINA SAVIÑÓN LOVELACE, *ET AL.*<br><br>Apelada | KLAN202500194 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: F DP2017-0025<br><br>Sobre: Daños y Perjuicios; Violación a Derechos Constitucionales; Hostigamiento (Bullyng), Persecución Maliciosa y Difamación |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa y la Jueza Díaz Rivera

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 10 de octubre de 2025.

Los apelantes, señor Ramón Torres Negrón y la señora Ana Velázquez Flores, nos presentan recurso de apelación mediante el cual solicitan que revoquemos la Sentencia en la que el Tribunal de Primera Instancia declaró no ha lugar la reclamación en daños y perjuicios, calumnia y difamación y otros, presentada por estos contra la señora Josefina Saviñon Lovelace. Por su parte, la apelada Josefina Saviñon Lovelace presentó su oposición al recurso. Con el beneficio de los escritos de ambas partes, resumimos los hechos esenciales para comprender la determinación que hoy tomamos.

**I**

Los apelantes presentaron una demanda contra la apelada por daños y perjuicios, violación de derechos constitucionales a la intimidad, reputación, hostigamiento, persecución maliciosa y difamación. La demanda incluyó las alegaciones siguientes. El apelante es el administrador del condominio Los Corales. La apelante ha sido su compañera consensual durante muchos años.

Número Identificador

SEN2025 _____

La apelada es propietaria de un apartamento que mantiene rentado. El 30 de enero de 2016 se coordinó con su inquilino la remoción de las rejas del balcón, por orden de la Junta. La apelada intentó detener los trabajos, llamó a la policía para denunciar al apelante y lo acusó falsamente y, en voz alta, de que era un viejo sucio y de que le cogió un seno. Su conducta destemplada alteró la paz del apelante. Posteriormente, continuó repitiéndolo y desarrolló una campaña para que no votaran por él. El 28 de abril de 2016 instigó una acusación en su contra por violación al Artículo 127 del Código Penal. El apelante fue arrestado y tuvo que pagar una fianza y usar un grillete. Los agentes que lo arrestaron le dieron una paliza que requirió tratamiento médico y lo esposaron, frente a sus vecinos. La apelada hizo una declaración jurada en su contra con imputaciones falsas. El caso no prosperó en vista preliminar. El 12 de mayo de 2016 acusó al apelante de entrar a su apartamento para apropiarse de dinero y reiteró que le agarró un seno. La orden de protección no fue concedida. Las actuaciones de la apelada ocasionaron a los apelantes grandes angustias emocionales y sufrimientos mentales, temor por su seguridad personal y familiar, malestares y gran desasosiego por la difamación pública.[1]

Por su parte la apelada presentó Contestación a la Demanda y Reconvención en la que alegó que el apelante le impedía el libre acceso a su propiedad e interfería innecesariamente con sus inquilinos al punto que cesaron el arrendamiento.[2]

El Tribunal de Primera Instancia (TPI) en su Sentencia determinó los hechos siguientes. El apelante administraba el Condominio Los Corales, Avenida Isla Verde de Carolina. Desde el año 2015 reside en el apartamento 405 de ese condominio junto a su pareja, Ana Velázquez Flores. Sus funciones eran las establecidas

---

[1] Apéndice del recurso, páginas 29 a 34.
[2] Id, páginas 35 a 36.

en la Ley de Condominios como ir al banco, hacer depósitos, reunirse con abogados, velar por los asuntos de mantenimiento, el orden, la seguridad, el pago de las cuotas de mantenimiento y los seguros y reportarse a la Junta de directores. El apelante tiene actualmente 74 años.[3]

Según el TPI, el apelante declaró lo siguiente. Él conoce a la apelada, porque es la titular del apartamento 209. La apelada no residía en el apartamento porque estaba alquilado, pero asistía a las reuniones de la Junta. Durante el año 2015-2016 no pagó las cuotas. El condominio asumió en ocasiones el pago del seguro comunal para no quedarse sin cubierta. El 15 de diciembre de 2015, el apelante le requirió por escrito que removiera las rejas del balcón porque alteraban la fachada. El asunto ya se había discutido en una asamblea. El 25 de mayo de 2016 el apelante le requirió por escrito que pintara las rejas y puertas de su apartamento en un término de treinta días. La apelada incumplió y se le concedió un término adicional de treinta días, con la advertencia de que iba a ser multada en caso de un nuevo incumplimiento. El 10 de junio de 2016 el apelante envió otra carta a la apelada con una multa de $75.00 por su incumplimiento. La apelada no pagó la multa en el término concedido. Su inquilino pagó la multa. El apelante envió otra carta a la apelada para que pintara la puerta de entrada del apartamento. El inquilino pintó la puerta y autorizó verbalmente la remoción de las rejas. Posteriormente vinieron dos personas a removerlas.[4]

Otros hechos que el TPI determinó del testimonio del apelante son los expuestos a continuación. El *handyman* del edificio lo llamó el día que se removieron las rejas para decirle que una guagua camión estaba mal estacionada e impedía la salida de los residentes. Cuando preguntó de quién era el camión le contestaron que lo envió

---

[3] Véase Sentencia, Apéndice, páginas 2 a 16, determinaciones de hecho 1 y 2.
[4] Véase Sentencia, Apéndice, páginas 2 a 16, determinaciones de hecho 3 a 11.

la apelada para llevarse las rejas. La apelada dijo en alta voz que era un viejo sucio y que le tocó un seno en la oficina. El incidente ocurrió en presencia de Noel Torres, de Lucrecio -el empleado de mantenimiento- y de otros chiveros del condominio. Él sufrió una gran depresión y vergüenza y lloró por la difamación e imputaciones falsas de la apelada. Por esos hechos denunció a la apelada por alteración a la paz, pero no se encontró causa. Posteriormente, la apelada inició un patrón de denuncias y persecución en el tribunal. La apelada presentó dos querellas en su contra que fueron declaradas No ha lugar. Además, presentó una reclamación por alteración a la paz en la que alegó que el apelante le tocó un seno y la obligó a entregarle la renta del inquilino. La denuncia de la apelada afectó su reputación moral viciosamente.[5]

El testimonio del apelante hizo que el TPI también determinara los hechos siguientes. La apelada prestó una declaración en un caso por maltrato en el que se acusó al apelante, porque le suspendió la electricidad a un residente de edad avanzada e impedido. La vista se realizó en ausencia, se determinó causa probable y se ordenó su arresto. La policía realizó el arresto con fuerza y violencia, lo empujaron contra la pared, lo golpearon y bajaron sangrando delante de las demás personas. El apelante se resistió a montarse en el vehículo que iban a transportarlo porque pensó que era un secuestro, debido a que la guagua era roja. Un policía le dio un puño en la cara, durante el trayecto. Además, se orinó porque estaba asustado, se sintió completamente agredido y escuchaba a su esposa llorando. El caso terminó con una determinación de no causa, pero le impusieron un grillete y una fianza de $25,000.00. Por estos hechos, el apelante dijo que recibió tratamiento médico y tomó medicamentos para la depresión

---

[5] Véase Sentencia, Apéndice, páginas 2 a 16, determinaciones de hecho 12 a 15.

ocasionada por los ataques a su integridad. El apelante declaró que las acusaciones eran falsas, porque no hubo ningún maltrato y lo único que hizo fue suspender la luz a una persona. Sin embargo, todavía siente vergüenza y deshonra cuando ve a las personas que presenciaron el incidente.[6]

Por último, el tribunal determinó los hechos a continuación basados en el testimonio del apelante. El 10 de octubre de 2016 la apelada radicó otra denuncia en su contra al amparo de la Ley de Controversia y Estados Provisionales del Derecho. El apelante declaró que la apelada hacía expresiones falsas en su contra a los residentes y que continuaba repitiendo que le tocó un seno. Las personas lo señalaban en las áreas comunes. Se asusta cuando tocan la puerta o escucha una sirena y brinca en la cama del susto. Durante el contrainterrogatorio admitió que no trajo al pleito a los policías que lo arrestaron, reconoció el derecho de los titulares a radicar quejas y denuncias y que el inquilino al que le suspendió la electricidad era incapacitado. No obstante, se justificó porque dijo que eso es lo que establece el reglamento.[7]

La sentencia apelada incluyó el testimonio la señora Ana Velázquez Flores. Su testimonio fue el siguiente. La testigo es la compañera del apelante desde hace 20 años, lo describió como humilde y trabajador y dijo que pagó sus estudios con esfuerzo. La señora Velázquez Flores declaró que sufre al verlo llorando todo el tiempo y que todavía se acercan para preguntarle si lo que alegaba la apelada era cierto.

Por su parte, el señor Alex Soto Aquilino declaró que conoce al apelante porque viven en el condominio y que en la Asamblea de 2015-2016 escuchó que no votaron por él porque era un viejo fresco.[8]

---

[6] Véase Sentencia, Apéndice, páginas 2 a 16, determinaciones de hecho 16 a 18.
[7] Véase Sentencia, Apéndice, páginas 2 a 16, determinaciones de hecho 19 a 23.
[8] Véase Sentencia, Apéndice, páginas 2 a 16, determinaciones de hecho 24 a 25.

De acuerdo con el TPI, el testimonio de la apelada fue el siguiente. Ella conocía al apelante hacía unos diez o doce años, porque era el administrador de Los Corales. Además, dijo que conocía a su compañera porque la había visto y la llamaba para saber de su salud, cuando se enfermó. No obstante, dijo que la llamaba para que votara por su esposo. Según la apelada, su apartamento no tenía ninguna deuda. La apelada declaró que Noel Torres trabajaba para ella y cuidaba a Ángel Soto un residente, al que le faltaban las piernas y usaba una silla eléctrica. Soto la llamó, porque el apelante le suspendió el servicio eléctrico. La fiscalía la entrevistó y ella hizo una declaración jurada. La apelada negó que dijo que el apelante le tocó un seno y lo responsabilizó de acusarla de alteración a la paz y decir que quería que le tocara un seno. Ella tenía que ir a su apartamento acompañada de otra persona y el apelante ponía una grabadora cuando hablaban. El día de la remoción de las rejas estaba alterado y vociferando. El apelante dijo que el muchacho que contrató estaba ocupando un estacionamiento que no le pertenecía y lo mando a irse. Luego de remover las rejas, radicó una petición al amparo de la Ley Número 140 porque el apelante no quería darle un beeper. Su inquilino se fue, debido a los problemas con el apelante. Por último, declaró que el apelante le dijo que se arrodillara y le pidiera perdón por el problema del seno. Ella se sintió humillada y afectada emocionalmente por sus actos.[9]

Otro testimonio que consta en la sentencia es el del señor Noel Torres. Según el TPI, el testigo declaró lo siguiente. Él trabajaba como *handyman* para la apelada desde el año 2010. Ella lo llamó para que recogiera las rejas del balcón, pero el apelante no permitió que se estacionara. La apelada llamó a la policía. Él se fue y las rejas

---

[9] Véase Sentencia, Apéndice, páginas 2 a 16, determinaciones de hecho 26 a 34.

se quedaron. La apelada no podía entrar porque siempre había una discusión con el apelante.[10]

Finalmente, el TPI declaró no ha lugar la demanda. El foro primario tomó en consideración que la denuncia por alteración a la paz que el apelante presentó contra la apelada no prosperó. Además, de que no fue la apelada quien lo denunció por maltrato a una persona de edad avanzada. El tribunal advirtió que esa denuncia la presentó un agente del orden público, a base de la información que le proveyó Ángel Luis Soto Marrero. El TPI restó importancia a la declaración jurada de la apelada. Según el TPI el juez que determinó causa únicamente consideró que el apelante le suspendió el servicio de energía eléctrica a un residente, sin considerar su salud e incapacidad. El foro primario no adjudicó responsabilidad a la apelada, porque la denuncia la hizo el Departamento de Justicia y el tribunal la evaluó y determinó causa probable para arresto.

El foro concluyó que el testimonio del apelante demostró que lo más que lo impactó emocionalmente fue su arresto. El TPI exoneró a la apelada de responsabilidad, porque no fue arrestado por hechos en su contra. El foro primario quedó convencido de que la apelada no afectó su honra y reputación, porque volvió a ser electo el año en que ella expresó públicamente que le cogió un seno. El tribunal concluyó que su reputación no se afectó, porque era considerado un administrador respetable y de buena reputación. Por otro lado, concluyó que tampoco se configuraron los elementos de una acción de persecución maliciosa ni una violación a sus derechos constitucionales. Aunque, reconoció que entre las partes existían desavenencias reales y agravios verbales, encontró contradicciones en ambos testimonios que ponían en juego su credibilidad. El TPI también declaró no ha lugar la reconvención, porque la apelada no

---

[10] Véase Sentencia, Apéndice, páginas 2 a 16, determinaciones de hecho 35 a 36.

demostró que el apelante ocasionó que sus inquilinos no continuaran rentando su apartamento.

Así las cosas, el 5 de noviembre de 2024 el TPI dictó la sentencia apelada en la que declaró no ha lugar la demanda y la reconvención. El apelante pidió determinaciones de hecho adicionales y la apelada se opuso. El TPI declaró No ha lugar la solicitud de determinaciones de hecho adicionales.

Inconforme el peticionario presentó este recurso en el que alega que:

1) ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA EN SU APRECIACIÓN DE LA PRUEBA, AL DETERMINAR QUE, A BASE DE UNA EVALUACIÓN DE LA EVIDENCIA PRESENTADA, NO SE CONFIGURARON LOS ELEMENTOS DE UNA CAUSA DE ACCIÓN POR ABUSO DE LOS PROCEDIMIENTOS Y PERSECUCIÓN MALICIOSA CONTRA EL APELANTE.

2) ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA EN SU APRECIACIÓN DE LA PRUEBA AL DETERMINAR QUE, A BASE DE UNA EVALUACIÓN DE ESTA, NO SE CONFIGURARON LOS ELEMENTOS DE UNA CAUSA DE ACCIÓN POR DIFAMACIÓN.

3) ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO EVALUAR LA PRUEBA PRESENTADA A LA LUZ DE LAS DISPOSICIONES DEL ARTÍCULO 1802 DEL CÓDIGO CIVIL Y RESOLVER EL MISMO ÚNICAMENTE A BASE DE LA DOCTRINA DE DIFAMACIÓN Y PERSECUCIÓN MALICIOSA.

4) ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL LIMITARSE EN SU SENTENCIA A RESUMIR LOS TESTIMONIOS DE LOS TESTIGOS SIN HACER UNA DETERMINACIÓN ESPECÍFICA SOBRE LOS CUÁLES FUERON LOS HECHOS PROBADOS EN QUE BASÓ SUS CONCLUSIONES, DESCARTANDO ASÍ LA PRUEBA NO CONTRADICHA DEL APELANTE Y ACEPTANDO EN LA PRÁCTICA, EL TESTIMONIO AMPLIAMENTE IMPUGNADO PROVISTO POR LA APELADA.

## II

## **LA DEFERENCIA**

La norma reiterada en nuestro ordenamiento jurídico es honrar deferencia a la apreciación de la prueba, adjudicación de credibilidad y determinaciones de hecho del Tribunal de Primera Instancia. La llamada norma de la deferencia judicial está predicada

en que los jueces de las salas de instancias son las que están en mejor posición para aquilatar la prueba testifical. Esto porque los jueces de instancia tienen la oportunidad de oír, ver y apreciar el comportamiento de los testigos mientras prestan su testimonio. No obstante, la norma de la deferencia no es absoluta, no puede aplicarse, cuando la apreciación del foro primario no represente el balance más justiciero y jurídico de la totalidad de la prueba. Además, tenemos la responsabilidad ineludible de intervenir cuando la evaluación del foro primario se distancia de la realidad fáctica o es inherentemente imposible o increíble. Ahora bien, nuestra intervención no se favorece ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión. Por último, advertimos que los foros apelativos tienen la facultad de adoptar su propio criterio, cuando las conclusiones de hecho están fundamentadas en prueba pericial o documental. En cuanto a dicha prueba, los tribunales incluso podrán descartar dicha prueba, aunque sea técnicamente correcta. S*antiago Ortiz v. Real Legacy et al*, 206 DPR 194, 219 (2021). Tan reciente como en *Peña Rivera v. Pacheco Caraballo,* 213 DPR 1009, 1024-1025 (2024), el Tribunal Supremo de Puerto Rico ratificó la norma de la deferencia judicial a la decisión del Tribunal de Primera Instancia. La decisión ratifica que la tarea de adjudicar credibilidad y determinar lo que ocurrió realmente en un caso, depende en gran medida de la exposición del juez o la jueza a la prueba y ese trabajo lo realiza el juez de instancia.

El tribunal explicó en *Ortiz Ortiz v. Medtronic,* 209 DPR 759, 779 (2022), cuando el juzgador incurre en pasión, prejuicio o parcialidad. El juzgador incurre en esa conducta, cuando actúa movido por inclinaciones personales de tal intensidad que adopta posiciones preferenciales o rechazos respecto a las partes o sus causas que no admiten cuestionamientos, sin importar la prueba e incluso antes de que sea sometida. Por su parte, el error manifiesto

ocurre cuando el foro apelativo queda convencido de que se cometió un error, a pesar de que hay evidencia que sostiene las conclusiones de hecho del tribunal de instancia. No obstante, existe un conflicto entre las conclusiones y el balance más racional justiciero y jurídico de la totalidad de la evidencia recibida. El error manifiesto se comete, cuando la apreciación de la prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble. La facultad de los tribunales apelativos para sustituir el criterio de los tribunales de instancia se reduce a aquellas circunstancias en las que a la luz de la prueba admitida no existe base suficiente que apoye su determinación.

## ACCIONES POR DAÑOS Y PERJUICIOS

Los actos y omisiones en los que intervenga culpa o negligencia acarrean responsabilidad civil extracontractual. El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia está obligado a reparar el daño causado. El demandante que reclama daños está obligado a establecer (1) la existencia de un daño real, (2) el nexo causal entre el daño y la acción u omisión culposa del demandado y (3) el acto u omisión tiene que ser culposo o negligente. La culpa o negligencia es la falta del debido cuidado y consiste en no anticipar ni prever las consecuencias racionales de un acto o de la omisión de un acto, previsto por una persona prudente en las mismas circunstancias. Además, es necesario que exista un nexo causal entre el acto culposo o negligente y el daño sufrido. La causa no es toda condición sin la cual no se hubiese producido el resultado, sino la que ordinariamente lo produce. *Pérez et al v. Lares Medical et al.*, 207 DPR 965, 976 (2021). Véase también artículo 1802, 31 LPRA sec. 5141, hoy derogado.[11]

---

[11] Los eventos facticos y procesales de este caso ocurrieron durante la vigencia del Código Civil de 1930, según enmendado, 31 LPRA *ant.* sec. I *et seq.* De manera que nuestro análisis toma en consideración las disposiciones de dicho estatuto y su jurisprudencia interpretativa.

**DIFAMACIÓN**

La protección contra ataques abusivos a la honra y reputación surge del Art. II, Sec. 8 de la Constitución de Puerto Rico, LPRA, Tomo 1, además de lo previsto por el Art. 1802 de nuestro Código Civil, supra, según modificado por la doctrina constitucional federal. La causa de acción por difamación conlleva la difícil tarea de balancear el alcance de la libertad de expresión y el derecho a la intimidad. La dificultad en dicha tarea estriba en que ambos valores son de alta jerarquía e interés público. *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 147 (2013). Aunque la Constitución es la fuente primaria de la protección contra injurias, la Ley de Libelo y Calumnia, 32 LPRA sec. 3141, aplica en lo que no sea incompatible. *Pérez v. El Vocero,* 149 DPR 427, 441 (1999).

La doctrina de difamación tiene dos vertientes que diferencian entre si el demandante es un funcionario o figura pública o una persona privada. *Meléndez Vega v El Vocero de PR*, supra. La difamación significa desacreditar a una persona mediante la publicación de cosas que lesionan su reputación. *Pérez v. El Vocero*, supra.

La acción de daños y perjuicios por difamación está reconocida en Puerto Rico e incluye el libelo y la calumnia. El libelo requiere un récord permanente de la expresión difamatoria. La calumnia es una expresión oral difamatoria. Como anticipamos la acción civil de daños y perjuicios ocasionados por difamación esta estatuida en la Ley de Libelo y Calumnia, supra. No obstante, cuando las expresiones o publicaciones difamatorias producen daños, sin que medie malicia o alguno de los elementos para que proceda la acción estatutaria por difamación, siempre procederá una acción bajo el artículo 1802, *supra.* El demandante estará obligado a probar todos los elementos de esa causa de acción que son: (1) la existencia de un daño real, (2) una acción u omisión en la

que intervenga culpa o negligencia y, (3) la relación causal entre el daño y la acción u omisión del demandado. La difamación es una causa de acción por daños y perjuicios. El daño en las acciones de difamación consiste en el menoscabo de la opinión de los demás sobre el valor de una persona en particular. No obstante, para que el daño exista es necesario que la persona se entere de que su honor fue perjudicado. *Ojeda v. El Vocero*, 137 DPR 315, 325-326, 329 (1994); *Romany v. El Mundo Inc.,* 89 DPR 604, 618 (1963).

La acción bajo el Artículo 1802 es más abarcadora que la acción por difamación, porque el perjudicado, además de ser compensado exclusivamente por la lesión a su reputación y a sus relaciones en la comunidad puede ser resarcido por los daños resultantes, como las angustias mentales y morales. *Colón, Ramírez v. Televicentro de P.R.,* 175 DPR 690, 707, 712-713 (2009)

### LA CAUSA DE ACCIÓN DE PERSECUCIÓN MALICIOSA

La persecución maliciosa o el uso injustificado de los procedimientos legales constituye la presentación maliciosa y sin causa de acción probable, de un proceso criminal o civil contra una persona que le produce daños a ésta. La malicia es el elemento indispensable en esta acción, en ausencia de la misma solo se genera una causa de acción en daños conforme al artículo 1802, supra. *Toro Rivera et als v. ELA et al,* 194 DPR 393, 408 (2015); *García v. E.L.A,* 163 DPR 800, 810 (2005); H.M. Brau del Toro,*Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. I, pág. 109. Para que prospere esta causa de acción el demandante debe demostrar que: (1) una acción civil fue iniciada, o un proceso criminal instituido, por el demandado o a instancias de éste; (2) que la acción, o la causa, terminó de modo favorable para el demandante; (3) que fue seguida maliciosamente y sin que existiera causa probable, y (4) que el demandante sufrió daños y perjuicios como consecuencia de ello. Al demandante le

corresponde alegar y probar la *falta de causa probable* por parte del demandado al presentar la denuncia o acusación y la *malicia* en cuanto a los hechos. y no las autoridades basadas en su propia evaluación de los hechos. El demandante tiene el peso de probar la malicia del demandado con bases fácticas y no con alegaciones vagas o meras conclusiones de derecho. *Toro Rivera et als. v. ELA et al, supra,* págs. 408- 409.

**III**

Los errores señalados ponen en entredicho la apreciación de la prueba y adjudicación de credibilidad del TPI. El apelante alega en el primer señalamiento de error que durante el juicio se probaron todos los elementos de una causa de acción por abuso de los procedimientos y persecución maliciosa. Su representación legal aduce que la apelada instó varios procesos criminales contra el apelante que nunca prosperaron y que estaban basados en información falsa.

Según el apelante, la apelada (1) lo acusó falsamente y en alta voz de que era un sucio y que le agarró un seno en la oficina, (2) instigó una acusación en su contra por maltrato de personas de edad avanzada y en ese caso hizo una declaración jurada con imputaciones falsas, (3) presentó una querella en la que alegó que entró a su apartamento, se apropió de dinero y repitió que le agarró un seno y (4) pidió una orden de protección en su contra porque quitó las rejas de su apartamento y ocasionó que su inquilino se mudara.

El TPI no responsabilizó a la apelada por la acusación de maltrato a una persona de la tercera edad, presentada contra el apelante, debido a que la denuncia la hizo un agente del orden público a base de la información provista por el Sr. Ángel Luis Soto Marrero. Además, determinó que fue el Ministerio Público el que decidió presentar la acusación y el tribunal evaluó la prueba y

determinó causa probable. El foro primario entendió que la petición de una orden de protección y la solicitud de remedios provisionales también eran insuficientes para concluir un patrón de persecución.

El primer señalamiento de error no se cometió, porque el apelante no logró demostrar que la apelada utilizó los procesos judiciales con la intención de perseguirlo maliciosamente.

La causa de acción por persecución maliciosa prospera cuando el demandante demuestra que; (1) el demandado instó una causa de acción civil o inició un proceso criminal en su contra, (2 la causa terminó a su favor, (3) al demandante le corresponde establecer que el demandado instó activa y maliciosamente la iniciación del proceso y no las autoridades basadas en su propia evaluación de los hechos. El demandante tiene el peso de probar la malicia del demandado con bases fácticas y no con alegaciones vagas o meras conclusiones de derecho. *Toro Rivera et als. v. ELA et al*, supra. La acusación contra el apelante por maltrato a una persona de edad avanzada no le confiere al apelante una causa de acción por persecución maliciosa contra la apelada. El reclamo del apelante carece de un elemento esencial para que se configure esa causa de acción, porque la apelada no inició el proceso criminal en su contra. La prueba nos convence de que las autoridades iniciaron el proceso a base de su propia evaluación de los hechos. Una gran parte del testimonio del apelante y del contrainterrogatorio de la apelada están basados en los incidentes relacionados con este caso criminal, incluyendo el arresto y los alegados incidentes de brutalidad policiaca. Sin embargo, el propio apelante aceptó que la denuncia la presentó un agente del orden público.[12] Una copia de la denuncia forma parte del expediente. Según consta en el documento, la denuncia la presentó el agente Jonathan A.

---

[12] Véase páginas 56-69 de la vista del 24 de mayo de 2023;15- 38 de la vista del 31 de octubre de 2023; 19 -29 de la vista del 25 de mayo de 2023 y 58-64 de la vista del 25 de mayo de 2023.

Hernández Román, fue autorizada por la fiscal, Rosaly Carrión Brunet y la jueza Colón Massó determinó causa probable y ordenó el arresto. Al apelante se le imputó que ilegal, voluntaria, maliciosa y criminalmente cometió abuso físico o maltrato al cortar el servicio de energía eléctrica al apartamento número 114 donde reside el Sr. Ángel Soto persona de edad avanzada, causándole daño y, o, exponiéndolo al riesgo de sufrir daño a su salud, seguridad y bienestar de este, al no poder contar entre otras, cosas con la energía necesaria para la operación de la máquina de terapia respiratoria.[13]

El foro apelado exoneró a la apelada de responsabilidad, porque (1) la denuncia la presentó el agente Jonathan A. Hernández Román basada en la información que le proveyó el perjudicado, Ángel Luis Soto Marrero, (2) el Departamento de Justicia decidió presentarla y, (3) el tribunal determinó causa para arresto luego de evaluarla. El apelante no presentó ninguna evidencia que derrote las conclusiones del foro primario.

La apelada solicitó una orden de protección porque el apelante presentó una querella de alteración a la paz en su contra. El 12 de mayo de 2016 el tribunal archivó el caso porque no existía un patrón de conducta, ni elementos para expedir la orden de protección.[14] Según declaró el apelante, la apelada alegó en la querella que: (1) le cogió un seno en la oficina, (2) la denunció por alteración a la paz y (3) obligó a su inquilino a entregarle un dinero que era de ella. [15] El 10 de octubre de 2016 la apelada solicitó un remedio provisional porque el apelado; (1) se negaba a darle el beeper al que tenía derecho, (2) le quitó sus rejas porque le tenía mala voluntad, e (1) hizo que su inquilino se fuera.[16] El apelante negó las alegaciones y

---

[13] Véase página 46, apéndice del recurso.
[14] Véase página 47, apéndice del recurso.
[15] Página 48 vista del 24 de mayo de 2023.
[16] Véase página 44, apéndice del recurso.

declaró que ninguna de las querellas en su contra prosperó.[17] La apelada reconoció que no pasó nada con la querella.[18] El apelante dijo no estaba molesto por los procedimientos judiciales que la apelada presentó en su contra, porque era un derecho que tenían los ciudadanos. No obstante, declaró que se sentía abochornado, pesaroso, preocupado y triste porque los vecinos veían al alguacil que iba a emplazarlo.[19]

El apelante no probó que la apelada presentó la querella por acecho y la solicitud de remedios provisionales del derecho, maliciosamente. La prueba presentada demuestra que el apelante también presentó una querella por alteración a la paz contra la apelada que tampoco prosperó. El apelante admitió que presentó una denuncia contra la apelada, porque la señora Saviñón dijo que le cogió un seno. La denuncia se presentó como evidencia estipulada. El apelante alegó en la querella que la apelada alteró su paz porque le pidió que moviera su vehículo, debido a que obstruía la salida de otros vehículos, le dijo malcriado y lo acusó de cogerle los senos. Sin embargo, reconoció que la denuncia culminó con una determinación de no causa.[20]

Por otro lado, el apelante discutió el segundo y el tercer señalamiento de error conjuntamente. Su representación legal argumenta que probó que la apelada lo difamó y que el TPI erró al no evaluar la prueba conforme al artículo 1802, *supra.* Según el apelante, la prueba dejó claramente establecido que la apelada incurrió en un patrón reiterado de persecución y difamación que consistió en múltiples querellas y en desprestigiarlo falsa y difamatoriamente en su lugar de residencia. Su representación legal

---

[17] Página 73 de la vista del 24 de mayo de 2023.
[18] Páginas 46 a 48 de la vista 25 de mayo de 2023.
[19] Páginas 74-75 de la vista del 24 de mayo de 2024.
[20] Página 43 de la vista del 24 de mayo de 2023 y 52 del apéndice del recurso.

sostiene que probó que apelada le ocasionó daños y perjuicios a su cliente.

El TPI concluyó que la prueba testifical y documental era insuficiente para establecer que la apelada desacreditó públicamente al apelante y que su conducta le ocasionó daños. El foro apelado no dio credibilidad a ninguna de las partes, porque ambas incurrieron en contradicciones. No obstante, determinó que, aun dando por cierto que la apelada acusó al apelante de cogerle un seno, sus expresiones no lesionaron su reputación. El foro primario llegó a esa conclusión porque el apelante fue reelecto como administrador. El TPI concluyó que el incidente que más impactó emocionalmente al apelante fue su arresto. No obstante, advirtió que no podía responsabilizar a la apelada por las actuaciones de los agentes del orden público que efectuaron el arresto.

El foro primario no cometió el segundo señalamiento, porque el apelante no probó una causa de acción por difamación contra la apelada por la ausencia probatoria del elemento de malicia, ni conforme al artículo 1802, supra. La norma es que los casos la difamación se resuelvan de acuerdo con la normativa de los daños y perjuicios extracontractuales. *Colón, Ramírez v. Televicentro de P.R., supra.* Por esa razón el apelante estaba obligado a demostrar (1) que la apelada cometió una acción u omisión culposa o negligente, (2) que sufrió daños y (3) que existe una la relación causal entre los daños que sufrió y la acción u omisión de la apelada.

El apelante no cumplió con esa carga procesal, porque no demostró una relación causal entre los daños sobre los que declaró y una acción u omisión culposa o negligente por parte de la apelada. Su testimonio estuvo dirigido a probar los daños que le ocasionó su arresto en el caso por maltrato a una persona de edad avanzada. El señor Torres declaró lo siguiente. A su apartamento llegaron como

agentes, que lo empujaron contra la pared, le dijeron malas palabras, forcejearon con él, le dieron puños por la espalda y la barriga, le pusieron un codo en el cuello y una rodilla en la espalda como a un criminal. El sargento le dio una bofetada, le cogió la cabeza por detrás y le ocasionó una cortadura, porque le dio contra un espejo en la pared. Un agente le quitó el teléfono a su esposa, lo rompió contra el piso y le puso la mano en los senos. Los agentes lo llevaban arrestado a empujones y en la calle había un montón de policías, patrullas, residentes y titulares de los negocios. Él no paraba de sangrar, debido a que toma pastillas para diluir la sangre y estaba bien asustado. Su esposa estaba en el balcón llorando. Él pensó que era un secuestro porque el vehículo en lo iban a montar no estaba rotulado. Un agente le quemó el cuello con el cinturón y sentía que se asfixiaba. A él le destruyeron la vida completamente con quince personas arrestándolo. Su récord estaba limpio, porque nunca había tenido ni una multa de tránsito y lo que hizo fue cumplir con su deber de suspender la luz a una persona que no pagó. Él tuvo que ir a un médico, porque tenía moretones en todo el cuerpo, le sacaron placas y le hicieron un sonograma porque orinaba sangre, debido a los puños que recibió en los riñones. Durante ocho días no pudo trabajar por el dolor físico y espiritual que le ocasionó que tantas personas lo vieran arrestado, sin saber que hizo. Él se pasaba llorando y no podía comer. Aun siente vergüenza y bochorno, porque todavía hay gente que estaba cuando ocurrieron los hechos.[21]

Los daños sobre los que declaró el apelante no están relacionados a una acción u omisión intencional o negligente de la apelada. La participación de la apelada se limitó a una declaración jurada. La apelada admitió que declaró sobre hechos que le comentó

---

[21] Páginas 57- 59, 61, 63 de la vista del 24 de mayo de 2023.

la víctima y sobre los que no tenía conocimiento personal. No obstante, su declaración jurada no fue la causa próxima ni eficiente de los daños que reclama. El apelante reclama daños por el abuso policiaco cometido durante su arresto. Sin embargo, no demandó a los agentes del orden público que realizaron el arresto. La apelada tampoco fue quien presentó la acusación. Un agente del orden público realizó la acusación conforme al testimonio de la víctima. El Ministerio Publico presentó la acusación. Un juez evaluó la acusación y determinó causa probable para arresto.

El apelante reclamó una indemnización porque la apelada lo acusó de tocarle un seno. Su testimonio es el siguiente. La apelada le gritó palabras indebidas e hirientes, porque le dijo viejo sucio y que le raspó un seno en la oficina. Sus expresiones lo deprimieron y abochornaron porque fueron escuchadas por el empleado de mantenimiento, una persona que identificó como Miguel, el muchacho que ayudaba a la apelada, José Torres y otra persona que no recordó el nombre. Unas cinco personas escucharon a la apelada. Se fue lloroso y avergonzado para su apartamento. Se quedó llorando en su apartamento.[22] La apelada destruyó su moral y reputación delante de otras personas viciosamente.[23] Durante una noche de asamblea, les dijo a varios titulares que le cogió un seno. Su moral, reputación, ética y buen nombre se destruyeron. Él encontró en el buzón de administración tres anónimos. Uno de los anónimos decía viejo sucio, otro que era un enfermo sexual y el tercero que, era un descarado y no debía seguir como administrador. Se pregunta si esas personas entendieron que eso no sucedió y que es mentira o, especulan si lo hizo. Cuando le tocan la puerta de su apartamento brinca de susto, porque se acuerda de su arresto. Además, se asusta cuando llega un alguacil o una patrulla al

---

[22] Página 42 de la vista del 24 de mayo de 2023.
[23] Página 49 de la vista del 24 de mayo de 2023.

condominio. A veces sale brincando de la cama. Su esposa es paciente de cáncer. Por eso, si le pregunta que le pasa, le contesta que nada para que no se sienta triste. Esta situación lo marcó para el resto de su vida.[24]

Por su parte, la señora Ana Velázquez declaró que el apelante era su compañero por veinte años. La testigo dijo que un vecino le tocó la puerta, porque la apelada le estaba gritando a su esposo delante de varias personas. La señora Velázquez afirmó que escuchó cuando le dijo que le cogió un seno. La testigo dijo que lloró mucho, porque conocía a su esposo y sabía que no hizo eso.[25]

La versión de los hechos de ninguna de las partes nos merece credibilidad. Ambas se radicaron querellas sobre el mismo asunto y ninguna prosperó. El apelante presentó una denuncia de alteración a la paz contra la apelada en la que alegó que lo acusó de cogerle un seno. No obstante, el tribunal determinó no causa. Por su parte, la apelada pidió una orden de protección contra el apelante en la que alegó que le cogió un seno. El tribunal no expidió la orden.

La parte apelante no derrotó la deferencia que merece la apreciación de la prueba del juez de instancia que escuchó y vio a los testigos declarar y apreció su comportamiento. A nuestro juicio la apreciación de la prueba del foro primario representa el balance más justiciero y jurídico de la totalidad de la prueba.

**IV**

Por las razones antes expresadas se confirma la sentencia apelada.

Lo acordó el Tribunal, y lo certifica la secretaria del Tribunal.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[24] Páginas 74 a 77 de la vista del 24 de mayo de 2023.
[25] Página 103 de la vista de 24 de mayo de 2023.